# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

───────

No. 15-20600

───────

United States Court of Appeals
Fif h Circuit

**FILED**
July 18, 2017

Lyle W. Cayce
Clerk

In The Matter Of: CHARLES PHILLIP COWIN

>        Debtor

CHARLES COWIN,

>        Appellant

v.

COUNTRYWIDE HOME LOANS, INCORPORATED; DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under the Pooling and Servicing Agreement relating to IMPAC Secured,

>        Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

cons w/16-20100

In the Matter of: CHARLES COWIN,

>        Debtor

BANK OF AMERICA, N.A.,

>        Appellee

v.

CHARLES COWIN, also known as Charles Phillip Cowin, also known as Charles P. Cowin,

>        Appellant

No. 15-20600 c/w 16-20100

Appeals from the United States District Court and
the United States Bankruptcy Court for the Southern District of Texas

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Charles Cowin—the bankruptcy debtor—appeals from the findings and conclusions of two bankruptcy court adversary proceedings. In both proceedings the bankruptcy court found that Cowin was involved in a scheme designed to deprive mortgage holders of foreclosure sale proceeds. The bankruptcy courts determined that the damages flowing from this scheme were nondischargeable debts pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). Cowin appealed the rulings in both proceedings, and we now affirm.

I

Both appeals center around a scheme designed to deprive mortgage holders of excess foreclosure sale proceeds through the use of tax-transfer liens authorized by the Texas Tax Code. The basic structure of the scheme was as follows: A purchaser/borrower bought a property subject to a first-lien mortgage at a condominium association foreclosure sale. Shortly after acquiring the property, the purchaser/borrower entered into a tax-transfer loan agreement with one of two Texas companies that Cowin controlled—Woodway Campton, Ltd. ("WCL") or Dampkring, LLC—for the purpose of paying real property taxes assessed against the property. In exchange for paying the taxes, the lender received a tax-transfer lien against the property.

Under Texas law, after a foreclosure sale, tax-transfer liens take priority, junior liens are extinguished, and any excess funds are paid to the junior lienholders in seniority order. *See* TEX. TAX. CODE § 32.06(b) & (j); *Saturn Capital Corp. v. City of Hous.*, 246 S.W.3d 242, 245 (Tex. App.–Hous. [14th

No. 15-20600 c/w 16-20100

Dist.] 2007, pet. denied). The WCL and Dampkring deeds of trust, which Cowin prepared, omitted language requiring the Trustee to distribute "any amounts required by law to be paid before payment to Grantor." By omitting this language, the bankruptcy court found that Cowin intended to divert the excess proceeds from the foreclosure sales away from the preexisting mortgage holders and to entities controlled by a co-conspirator.

Immediately after entering into the tax-transfer loan agreement, the purchaser/borrower would default on the payment obligations under the agreement, and Cowin would instruct the trustee of the tax-transfer deed to foreclose on the property. From the foreclosure sale proceeds, the trustee took a $1,000 fee, paid the private lenders' tax-transfer liens in full, and delivered the excess proceeds to the purchaser/borrower.

At issue in this appeal are four specific instances in which this scheme was carried out.[1] In the first instance, Cowin and his co-conspirators deprived Countrywide Home Loans Inc. of excess proceeds from the foreclosure sale of a property on which Countrywide serviced a preexisting mortgage loan (the "Countrywide Property").[2] The same scheme deprived Bank of America, N.A. of excess proceeds from the foreclosure sales of three properties on which Bank of America serviced mortgages (the "BANA Properties").

II

Bank of America sued Cowin and the other scheme participants, seeking to recover excess funds (and other damages) from the foreclosure of the BANA Properties. On February 14, 2010, while the Bank of America litigation was pending in the Southern District of Texas, Cowin filed for Chapter 11

---

[1] The plaintiffs in both adversary proceedings presented evidence that the Cowin and his co-conspirators carried out this scheme on numerous occasions in connection with other properties

[2] Deutsche Bank National Trust Company was the trustee for the preexisting mortgage.

3

No. 15-20600 c/w 16-20100

bankruptcy in that district's bankruptcy court. The bankruptcy case was dismissed five weeks later.

Cowin filed a second bankruptcy case on May 19, 2010. Soon after, on November 10, 2010, Countrywide, Deutsche Bank, and several other banks (together, the "Countrywide Plaintiffs") holding preexisting mortgages on properties purchased by Cowin's co-conspirators brought adversary proceedings, seeking a finding of nondischargeability. The bankruptcy court consolidated the proceedings (the "Countrywide Adversary Proceeding"). In January 2012, while the Countrywide Adversary Proceeding was pending, the bankruptcy court dismissed Cowin's bankruptcy case after finding that Cowin had "abused the [bankruptcy] process by filing two Chapter 11 petitions within the last 2 years [without filing] a plan and disclosure statement." At the parties' request, however, the bankruptcy court retained the Countrywide Adversary Proceeding for final adjudication.

The Bank of America litigation was tried in January 2013. On the fifth day of trial, the parties agreed to settle. Pursuant to the Settlement Agreement, if Cowin paid Bank of America $500,000 before September 1, 2013, the parties' agreed judgment (the "BANA Agreed Judgment") would never enter. If Cowin filed for bankruptcy before then, however, Bank of America would "immediately be entitled to seek relief from the automatic bankruptcy stay to enter the agreed judgment."

On February 21, 2013, before the bankruptcy court issued findings and conclusions in the Countrywide Adversary Proceeding, Cowin filed for Chapter 7 bankruptcy. Cowin's Chapter 7 case was assigned to the same bankruptcy judge handling the Countrywide Adversary Proceeding. The bankruptcy court lifted the automatic stay so the federal district court could enter the BANA Agreed Judgment. The district court entered the judgment on April 24, 2013.

On April 25, 2013, the bankruptcy court issued a memorandum opinion

in the Countrywide Adversary Proceeding (the "Countrywide Nondischargeability Opinion"), concluding that Cowin was liable to the Countrywide Plaintiffs for the aggregate amount of the excess proceeds, and that his debts arising from the state-law violations were nondischargeable. Before the bankruptcy court entered final judgment, on May 16, 2013, Cowin filed a suggestion of bankruptcy, formally notifying the court of his Chapter 7 filing. Days later, on May 29, 2013, the bankruptcy court entered final judgment in the Countrywide Adversary Proceeding (the "Countrywide Adversary Judgment"), awarding $268,477.78 in damages, attorneys' fees, costs, and interest to Countrywide and Deutsche Bank. The bankruptcy court emphasized that that its determination of nondischargeability, although rendered in adversary proceedings brought during Cowin's previous Chapter 11 case, applied to Cowin's newly filed Chapter 7 case.

Cowin appealed the Countrywide Nondischargeability Opinion and Judgment to the district court on June 12, 2013. On September 29, 2015, the district court affirmed. Cowin then timely appealed to this court.[3]

Meanwhile, on May 30, 2013, Bank of America filed an adversary proceeding in Cowin's Chapter 7 case (the "BANA Adversary Proceeding), seeking a determination of nondischargeability as to the BANA Agreed Judgment. On September 30, 2014, the bankruptcy court partially granted summary judgment in favor of Bank of America, holding that collateral estoppel precluded Cowin from contesting findings and conclusions in the Countrywide Nondischargeability Opinion. The bankruptcy court heard testimony and oral argument on three disputed factual issues, and ultimately determined that the BANA Agreed Judgment was a nondischargeable debt. Cowin moved to certify a direct appeal to this court, which the district court

---

[3] Only Countrywide and Deutsche Bank are parties to this appeal.

No. 15-20600 c/w 16-20100

granted, and the two appeals were consolidated.

Cowin raises numerous issues in his consolidated appeal. First, he argues that the bankruptcy court erred in ruling that his debts to Countrywide were nondischargeable. Second, he contends that the bankruptcy court violated the automatic stay in his Chapter 7 case by entering the Countrywide Adversary Judgment, and that the Countrywide Adversary Judgment is therefore void. Next, Cowin argues that the BANA Settlement Agreement extinguished all pre-settlement causes of action, including actions to determine nondischargeability. Cowin also contends that the bankruptcy court erred in finding that he was liable for the actions of Dampkring. Additionally, he argues that the bankruptcy court erred in finding that he instructed the trustee to foreclose on the BANA Properties. Finally, Cowin contends that the bankruptcy court erred by giving preclusive effect to the Countrywide Adversary Judgment in the BANA Adversary Proceeding.

## III

We review a district court's affirmance of a bankruptcy court's decision by applying the same standard of review that the district court applied. *Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1042 (5th Cir. 2012) (citing *United States v. Martinez (In re Martinez)*, 564 F.3d 719, 725–26 (5th Cir. 2009)). Thus, we review questions of fact for clear error and conclusions of law de novo. *Id.* Mixed questions of law and fact are also reviewed de novo. *Id.* We review a bankruptcy court's decision on direct appeal under the same standards. *Id.*

## IV

"[T]he issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Nondischargeability must be established by a preponderance of the evidence. *Id.* at 287. "Intertwined with this burden is the basic principle of

bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). However, the Bankruptcy Code limits the opportunity for a new beginning to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 287 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

Section 523(a) of the Bankruptcy Code sets forth the categories of non-dischargeable debt. Relevant here, section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Cowin's debts are nondischargeable if they fall within either the § 523(a)(4) or the § 523(a)(6) exception.

Cowin does not challenge on appeal the bankruptcy court's conclusions that he participated in a conspiracy to divert proceeds from the Countrywide Plaintiffs, is liable for state-law violations due to his participation in the conspiracy, and that the conduct and intent of the conspiracy meet the federal common law standard for either the "larceny" or "willful or malicious injury" exception. Rather, Cowin argues that the bankruptcy court erred in imputing to him the actions and intent of his co-conspirators in determining nondischargeability.

Cowin's argument is unavailing for several reasons. First, the bankruptcy court's determination that Cowin's debts are nondischargeable under §§ 523(a)(4) and 523(a)(6) is sufficiently supported by factual findings regarding Cowin's *individual* intent and conduct. With regard to § 523(a)(4), the court required that the Countrywide Plaintiffs prove two elements of

larceny: (1) "the fraudulent and wrongful taking away of the property of another" with (2) "the intent to convert it to the taker's use and with the intent to permanently deprive that owner of such property." *Nibbi v. Kilroy (In re Kilroy)*, 357 B.R. 411, 431 (Bankr. S.D. Tex. 2006) (quoting *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000)). Contrary to Cowin's argument, the bankruptcy court made findings about his personal conduct and intent sufficient to satisfy this standard. These findings include:

- Cowin used WCL and Dampkring to participate in the scheme as a lender, and Cowin was responsible for preparing the WCL and Dampkring deeds of trust.
- Cowin intentionally omitted language instructing the trustee to distribute "any amounts required by law to be paid before payment to Grantor" from the Dampkring and WCL deeds of trust so as to divert the excess proceeds to entities controlled by his co-conspirator.
- Cowin instructed the trustee to foreclose on the Countrywide Property, and Cowin knew the Countrywide Property was encumbered with a preexisting mortgage lien.
- "The structure of the conspiracy . . . shows that [Cowin] and his co-conspirators acted purposefully and intentionally to deprive the [Countrywide] Plaintiffs of their liens on the [properties], as well as their liens on the excess proceeds resulting from the foreclosure sales of those properties."

These findings about Cowin's personal conduct and intent are sufficient to support a determination of nondischargeability under § 523(a)(4).

Likewise, in determining "willful and malicious injury" under § 523(a)(6), the bankruptcy court required that the Countrywide Plaintiffs demonstrate that Cowin had "either an objective substantial certainty of harm or a subjective motive to cause harm." *See Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). Again, the bankruptcy court's determination is supported by findings about Cowin's personal conduct and intent. The bankruptcy court found that "[C]owin acted with the subjective motive to cause harm to the Plaintiffs' interests, and that, at the very least,

there was an objective substantial certainty that harm would result." Further, the bankruptcy court found that Cowin intended to cause—and in fact did cause—financial injury to the [Countrywide] Plaintiffs.

In any event, the intent and actions of Cowin's co-conspirators is sufficient to support nondischargeability under § 523(a)(4). Our decision in *Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746 (5th Cir. 2001), although concerning a different basis of nondischargeability, is instructive. In *Deodati*, a state court held a partnership liable for fraud based on the wrongful acts of one partner, and imposed joint and several liability against the partnership and the individual partners. *Id.* at 748. The innocent partners filed for bankruptcy and the bankruptcy court discharged the debt. *Id.* On appeal, we focused on the text of the § 523(a)(2) exception for debt obtained by fraud, concluding that "the plain meaning of the statute is that debtors cannot discharge any debts that arise from fraud so long as they are liable to the creditor for the fraud." *Id.* at 749; *see also Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) ("It is clear that 'debt for' . . . means 'debt arising from' or 'debt on account of' . . . ."). Notably, we observed that "[t]he statute focuses on the character of the debt, not the culpability of the debtor . . . ." *Deodati*, 239 F.3d at 749. Based on the statute's plain language, we explained that "whether the debt arises from fraud is the *only* consideration material to nondischargeability." *Id.* at 749, 751–52. Accordingly, we reversed the bankruptcy court, concluding that the debt was nondischargeable under § 523(a)(2). *Id.* at 751–52; *see also Aetna Cas. & Sur. Co. v. Markarian (In re Markarian)*, 228 B.R. 34, 39 (1st B.A.P. Cir. 1998) ("[S]ection 523(a)(2)(A) may include debts which arise from the wrongful acts of conspirators and their co-conspirators."); *MacDonald v. Buck (In re Buck)*, 75 B.R. 417, 420–21 (Bankr. N.D. Cal. 1987) ("[A] debtor who has made no false representation may nevertheless be bound by the fraud of another if a debtor is a knowing and

active participant in the scheme to defraud.").

The same reasoning is relevant to determining the scope of § 523(a)(4). Section 523(a)(4) excepts from discharge debts "for . . . larceny." The text adds no further criteria or qualifications. Like § 523(a)(2), a plain reading of the provision is that a debtor cannot discharge a debt that arises from larceny so long as the debtor is liable to the creditor for the larceny. *See Deodati*, 239 F.3d at 749. It is the character of the debt rather than the character of the debtor that determines whether the debt is nondischargeable under § 523(a)(4). *See id.* at 749, 751–52; *see also Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 784 (Bankr. S.D. Tex. 2008) (citing *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 337 (10th Cir. 1994)) (analyzing "the character of the debt" to determine whether a debt was dischargeable under § 523(a)(4)).

Cowin does not challenge the bankruptcy court's findings that he participated in the civil conspiracy to deprive Countrywide of excess proceeds from foreclosure sales or that he owes Countrywide a debt stemming from the resulting state law violations. Nor does Cowin dispute the court's conclusion that together, Cowin and his co-conspirators committed illegal acts constituting "larceny" within the meaning of § 523(a)(4). Accordingly, Cowin's debts to the Countrywide Plaintiffs (and Bank of America) "arise" from larceny and are nondischargeable in bankruptcy.[4]

---

[4] Although the conduct and intent of Cowin's co-conspirators is sufficient to support nondischargeability under § 523(a)(4), we do not reach whether the reasoning of *Deodati* applies equally to support nondischargeability under § 523(a)(6) because of the conduct and intent of co-conspirators. Section 523(a)(6) excepts from discharge debts "for willful and malicious injury *by the debtor* to another entity or to the property of another entity." (emphasis added). In contrast to §§ 523(a)(2) and 523(a)(4), the plain language of § 523(a)(6) explicitly requires action "by the debtor." Consistent with this reading, several courts have interpreted 523(a)(6) to require that the debtor have acted personally to inflict the willful and malicious injury. *See, e.g.*, *Kalmanson v. Nofziger (In re Nofziger)*, 361 B.R. 236, 243 (Bankr. M.D. Fl. 2006) ("[A] co-conspirator's acts can not [sic] suffice to establish the elements of [§ 523(a)(6)], unless the acts were taken directly by the debtor against the objecting creditor.");

No. 15-20600 c/w 16-20100

V

Cowin next argues that the bankruptcy court violated the automatic stay in his Chapter 7 case by entering the Countrywide Adversary Judgment. Whether the automatic stay applies to adversary proceedings filed in the same court in which the debtor's bankruptcy case is pending is a question of first impression in this circuit.

The Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of" the bankruptcy case, "or to recover a claim against the debtor that arose before the commencement of" the bankruptcy case" 11 U.S.C. § 362(a). The automatic stay has three basic purposes: "(1) to provide the debtor a breathing spell from his or her creditors by stopping all collection efforts[;] (2) to protect creditors from each other by stopping the race for the debtor's assets and preserving the assets for the benefit of all creditors[;] and[] (3) to provide for an orderly liquidation or administration of the estate." *Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R. 641, 643 (9th B.A.P. Cir. 1992); *see also Commonwealth Oil Ref. Co. v. U.S. Envtl. Prot. Agency (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1182 (5th Cir. 1986). Creditors may obtain relief from the stay by showing cause. 11 U.S.C. § 362(d)(1).

Although the automatic stay halts collection efforts, the Bankruptcy Code sets forth certain procedures for asserting claims against the debtor and the estate. Namely, the Bankruptcy Code allows creditors to file a proof of claim against the debtor's estate. 11 U.S.C. § 501(a). "The concept of a claim is

---

*see also Luc v. Chien (In re Chien)*, BAP No. NC-07-1268-JuMkK, 2008 WL 8240422, at *7 (9th B.A.P. Cir. Feb. 7, 2008).

11

broad, and it includes 'all legal obligations of the debtor, no matter how remote or contingent . . . [that will] be dealt with in the bankruptcy case.'" *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008) (quoting *Egleston v. Egleston (In re Egleston)*, 448 F.3d 803, 812 (5th Cir. 2006)); *see also* 11 U.S.C. § 101(5)(A), (B). Additionally, creditors may file adversary actions, including dischargeability actions, in the bankruptcy court to resolve certain issues arising under the Bankruptcy Code or arising in bankruptcy cases. *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2)(I).

On its face, the text of § 362(a) applies to any "judicial . . . action or proceeding against the debtor." However, we have recognized at least one exception to this general rule. In *Campbell v. Countrywide Home Loans, Inc.*, we held that the automatic stay has no effect on a creditor filing a proof of claim in the bankruptcy case. 545 F.3d at 356–57. We noted that a number of courts had found that the automatic stay does not bar actions that are expressly allowed under the Bankruptcy Code. *Id.* at 356 (citing *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991)). Elaborating on this "general principle," we explained that "[t]he automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court." *Id.* (quoting *In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000)).

While the language in *Campbell* could suggest a broad rule, the holding was narrow: the automatic stay does not bar the filing of proofs of claims in the debtor's bankruptcy case. *Id.* at 356–57. Thus *Campbell* does not determinatively resolve our inquiry. Yet, even assuming error in entering the Countrywide Adversary Judgment because of the automatic stay,[5] such error

---

[5] As the district court observed, the majority of courts that have considered the issue have held that "[t]he automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy

would be harmless. *See United States v. Ruff (In re Rush-Hampton Indus., Inc.)*, 98 F.3d 614, 617 (11th Cir. 1996) (holding that "the otherwise harmless violation of the automatic stay [did not] suffice to deprive the IRS of the post-petition interest setoff to which . . . it would have been entitled had it first sought a lifting of the stay from the bankruptcy court"); *United States v. Jones (In re Jones)*, 230 B.R. 875, 883 (M.D. Ala. Bankr. 1999) (holding that the IRS's violation of the automatic stay, "although not justifiable, was harmless"); *see also Macon Uplands Venture v. Metropolitan Life Ins. (In re Macon Uplands Venture)*, 624 F.2d 26, 28 (5th Cir. 1980) ("Even assuming that procedural errors exist, they are not cause for reversal if no prejudice occurred.").

Any error would be harmless here for three reasons. First, everything in the record indicates that the bankruptcy court would have lifted the Chapter 7 stay to enter the Countrywide Adversary Judgment had the Countrywide Plaintiffs requested relief: the bankruptcy court had previously lifted the stay to allow the BANA Agreed Judgment to enter and the Countrywide Nondischargeability Opinion emphasized that that the determination of nondischargeability applied to Cowin's newly filed Chapter 7 case. Second, if the bankruptcy court had lifted the automatic stay for the purpose of entering

---

proceedings are pending." *Snavely v. Miller (In re Miller)*, 397 F.3d 726, 730 (9th Cir. 2005) (citing *Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*, 886 F.2d 1233, 1237 (9th Cir. 1989)); *see also Prewitt*, 135 B.R. at 643; *Sharf v. BC Liquidating, LLC*, No. 14-CV-7320 (JMA), 2015 WL 5093097, at *4–5 (E.D.N.Y. Aug. 28, 2015); *Cellceutix Corp. v. Nickless (In re Formatech, Inc.)*, 496 B.R. 26, 35 (Bankr. D. Mass. 2013*)*; *Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 129 (Bankr. D. Del. 2009) (collecting cases and describing this as the majority view among bankruptcy courts); *J.S. II, L.L.C. v. Snizter (In re J.S. II, L.L.C.)*, No. 08 C 3582, Bankr. No. 07-3856, 2009 WL 889988, at *3 n.4 (N.D. Ill. Mar. 31, 2009). However, a minority view perceives that filing an adversary proceeding in the debtor's home bankruptcy court violates the automatic stay. *See In re Adkins*, 513 B.R. 888, 891–96 (Bankr. N.D. Tex. 2014) (holding that the filing of an adversary proceeding in the same court as debtor's petition but different bankruptcy case violated the automatic stay); *Bridges v. ContinentalAFA Dispensing Co. (In re ContinentalAFA Dispensing Co.)*, 403 B.R. 653, 659 (Bankr. E.D. Mo. 2009) (filing of adversary class action in debtor's bankruptcy case violated automatic stay).

the Countrywide Adversary Judgment, the outcome would have remained the same. Vacating and remanding so that the bankruptcy court can retroactively lift the automatic stay and re-enter the Countrywide Adversary Judgment would leave Cowin in the same position he is in now. *See Chapman v. Bituminous Ins. Co. (In re Coho Res.)*, 345 F.3d 338, 344 (5th Cir. 2003) (quoting *Soares v Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997)) (explaining that the bankruptcy court has statutory power to "lift the automatic stay retroactively and thereby validate actions which otherwise would be void"). Third, Cowin was not prejudiced by the bankruptcy court's failure to lift the stay. The Countrywide Adversary Proceeding was originally filed in Cowin's individual bankruptcy case, which was dismissed with prejudice because of Cowin's failure to make necessary filings. Despite the dismissal, the parties jointly asked the court to retain jurisdiction so they could continue to litigate the adversary proceeding. Allowing the Countrywide Adversary Proceeding to continue and the Countrywide Adversary Judgment to enter after Cowin filed his Chapter 7 case—in the same court and before the same judge as the Countrywide Adversary Proceeding—caused no harm to Cowin or his estate. He was a willing participant in the ongoing litigation and the adversary proceeding would have been no different if it had been refiled in the later Chapter 7 case. Indeed, filing a new adversary proceeding in the Chapter 7 case would have only created duplicitous litigation and further depleted estate resources. Additionally, Cowin filed his Chapter 7 case in February 2013, but did not file a suggestion of bankruptcy until after the bankruptcy court issued the Countrywide Nondischargeability Opinion. This also demonstrates that Cowin was not harmed by the ongoing litigation of the Countrywide Adversary Proceeding and only sought to enforce the automatic stay to avoid the adverse judgment. *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993) (recognizing an equitable exception to the

automatic stay where "the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result"); *Job v. Calder (In re Calder)*, 907 F.2d 953, 956–57 (10th Cir. 1990) (holding that the automatic stay did not bar the filing of a proof of claim where the debtor actively litigated a separate action during the pending bankruptcy proceeding because to "permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached . . . would be inconsistent with the underlying purpose of the automatic stay").

Cowin has failed to demonstrate that he was prejudiced by the bankruptcy court entering the Countrywide Adversary Judgment without lifting the automatic stay in his Chapter 7 case. Any error would be harmless, and we affirm the district court on that basis.

## VI

We have carefully reviewed the record in light of Cowin's remaining arguments on appeal and conclude that that they are also without merit. Accordingly, and for all the foregoing reasons, we AFFIRM the rulings of the district court in the Countrywide Adversary Proceeding and the bankruptcy court in the BANA Adversary Proceeding.