# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2021

Lyle W. Cayce
Clerk

No. 20-40026

In the Matter of: Edward Mandel

*Debtor*,

Edward Mandel,

*Appellant*,

*versus*

White Nile Software, Incorporated; Rosa R. Orenstein; Mastrogiovanni, Schorsch and Mersky,

*Appellees*,

consolidated with

No. 20-40340

In the Matter of: Edward Mandel

*Debtor*,

Edward Mandel,

*Appellant*,

*versus*

STEVEN THRASHER, INDIVIDUALLY; WHITE NILE SOFTWARE, INCORPORATED; JASON COLEMAN; MADDENSWELL, L.L.P.; LAW OFFICES OF MITCHELL MADDEN,

*Appellees.*

---

Appeals from the United States District Court
for the Eastern District of Texas
USDC Nos. 4:17-CV-261 and 4:17-CV-262

---

Before JONES, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:*

These consolidated appeals are the latest in a number of appeals that this court has addressed stemming from Appellant Edward Mandel's bankruptcy proceedings. Because a notice of appeal was not timely filed regarding the district court's rulings in case number 4:17-cv-262, we lack appellate jurisdiction over assertions of error relating solely to the dischargeability of debts owed Appellees Steven Thrasher, White Nile Software Incorporated, and Jason Coleman. Otherwise, finding no reversible error, we AFFIRM for the reasons stated herein.

## I.

The complete factual and procedural background of these appeals is more than adequately set forth in our four prior opinions, issued between August 2014 and September 2018, regarding these bankruptcy proceedings. *See In re Mandel*, No. 13-40751, 578 F. App'x 376 (Aug. 15, 2014) (*Mandel I*); No. 15-40864, 641 F. App'x 400 (Mar. 7, 2016) (*Mandel II*); No. 17-40059, 720 F. App'x 186 (Feb. 15, 2018) (*Mandel III*); and No. 17-40392, 747 F.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

App'x 955 (Sept. 7, 2018)(*Mandel IV*). For purposes of the instant consolidated appeals, the district court's two December 19, 2019 memorandum opinions (both entitled "Memorandum on Appeal from Bankruptcy Court") in case numbers 4:17-cv-261 and 4:17-cv-262, and the district court's April 24, 2020 order, in case number 4:17-cv-262, denying leave to appeal—together with the  bankruptcy court's September 12, 2013 Order and March 31, 2017 Findings of Fact and Conclusions of Law— provide the rulings of which Mandel seeks review in this court.

For issues raised in these appeals, the following background information should suffice. This matter involves several disputes between co-founders of the company White Nile.  Mandel and Thrasher initially formed White Nile, in early 2005, to develop Thrasher's internet search invention. White Nile then hired Coleman to be its chief creative officer.  By the end of 2005, however, the business relationship had disintegrated.

In essence, Thrasher contended that he had developed valuable intellectual property and, based on Mandel′s misrepresentations, assigned that property to White Nile.   Then, Mandel, in concert with others, purported to act for White Nile in order to release himself and others from non-disclosure agreements, so that he could misappropriate trade secrets for use by his new corporation, NeXplore.  Mandel's actions, Thrasher maintained, prevented him from realizing value from his own inventions. Coleman alleged that he was fraudulently induced by Mandel to enter into a consulting agreement with White Nile and was deprived of compensation for his work and his interest in the intellectual property as a co-inventor. Mandel denied all of Thrasher's and Coleman's claims, asserting among other things that NeXplore was formed to develop an internet search engine concept with an entirely different web-based inference.

As we explained in *Mandel I*, Mandel was found to have misappropriated White Nile's trade secrets and formed a new company, NeXplore. The bankruptcy court held Mandel liable for (1) theft or misappropriation of trade secrets; (2) breach of contract; (3) breach of fiduciary duty; (4) fraud and fraudulent inducement; (5) oppression of shareholder rights; and (6) conspiracy. It awarded $400,000 in damages to Coleman; $1,000,000 to Thrasher; and $300,000 to White Nile. In *Mandel I*, we affirmed the liability holdings but remanded the matter to the bankruptcy court to "either conduct an additional evidentiary hearing on the issue of damages or explain its award of damages on the basis of the evidence in the present record." Following remand, we affirmed the district court's judgment, in February 2018, regarding damages imposed in favor of Thrasher, Coleman, and White Nile. *See Mandel III*.

Also pertinent here are previous rulings regarding fees owed by Mandel to Appellees Rosa Orenstein and Mastrogiovanni, Schorsch & Mersky (hereinafter, "MSM"). Orenstein was appointed by a Texas state court to serve as a receiver for White Nile in connection with a lawsuit regarding ownership of White Nile. With court approval, Orenstein retained MSM as counsel to assist her in her duties. As set forth in *Mandel IV*, three state court orders regarding the receivership are relevant here.

The first state court receivership order was entered on November 1, 2008, by consent of the parties. It established the scope of the receiver's authority and the manner in which the receiver would be selected. Mandel agreed to pay 52.5% of the receiver's fees and Thrasher 47.5% of the receiver's fees. The order also stated that the receiver lacked authority to retain independent counsel without notice to the parties and court approval.

The second state court receivership order, dated May 29, 2009, appointed Orenstein, a bankruptcy attorney and one of the parties' proposed

candidates, as the receiver. The second order restated the fee-sharing agreement between Mandel and Thrasher but did not include the prohibition on the retention of independent counsel. There also was no language in the second receivership order stating that it vacated or supplanted the first receivership order.

Thereafter, Orenstein retained MSM to assist her in her capacity as receiver. Mandel and Thrasher initially agreed to Orenstein's retention of counsel, but Mandel soon began to object to the continued retention of MSM. Over Mandel's objection, the state court entered the third receivership order, in September 2009, finding MSM's retention to be authorized under the receivership orders and stating the terms of Mandel's and Thrasher's payment to the receiver and MSM.

Later, when Orenstein sent Mandel a bill for $14,000 in attorney's fees related to the receivership, he failed to pay and wrote to the state court claiming an inability to financially comply. Orenstein moved to compel compliance and the state court ordered financial discovery. A hearing was held after Orenstein alleged that Mandel was not complying with the ordered financial discovery. Rather than issuing a ruling at that time, the court continued the hearing to allow Mandel another opportunity to voluntarily comply. Subsequently, Mandel initiated mandamus proceedings concerning the validity of the payment order; the Supreme Court of Texas ultimately denied relief. (Orenstein hired an attorney at Hankinson Levinger to represent her in those mandamus proceedings.) On January 24, 2010, the day that the state trial court was set to resume the hearing on the enforcement of the payment order, Mandel filed for bankruptcy.

Eventually, the bankruptcy court decided that Orenstein was entitled to $315,553 in total fees for her work as White Nile's receiver and that MSM was entitled to $155,517 in total fees for its work assisting Orenstein. The

district court subsequently overruled each of Mandel's objections and affirmed the award.  On appeal in *Mandel IV*, we determined, in September 2018, that the state court had authorized the retention of counsel to assist Orenstein in her duties as receiver, and that Orenstein's retention of counsel for the mandamus proceedings were done in her capacity as the receiver.[1]

Meanwhile, after *Mandel II* issued on March 7, 2016, the bankruptcy court tried Appellees' objections to discharge and dischargeability in August and September 2016.  On March 31, 2017, the bankruptcy court issued its 66-page Findings of Fact and Conclusions of Law sustaining some, but not all, of Appellees' objections to Mandel's discharge and the dischargeability of the debts owed to Appellees.  Thereafter, we issued *Mandel III*, on February 15, 2018, affirming the compensatory damage awards owed to Thrasher, Coleman, and White Nile, and, on September 7, 2018, *Mandel IV* regarding the categories of fees recoverable by Orenstein and MSM. The district court's memorandum opinions regarding Mandel's appeals of the bankruptcy court's March 31, 2017 Findings of Fact and Conclusions of Law—regarding discharge and dischargeability of debt—followed on December 19, 2019.

## II.

In these consolidated appeals, Mandel challenges the district court's December 19, 2019 rulings (affirming the bankruptcy court's determinations) that he should be denied discharge of his debts both

---

[1] The retention of counsel to assist in the bankruptcy case was not authorized, however,  because Orenstein was not acting in her capacity as receiver when representing White Nile as a creditor in the bankruptcy. However, those attorney fees already were excluded from the award. Thus, at the conclusion of *Mandel IV*, we remanded the fee award, in September 2018, for recalculation solely to remove any fees attributable to Orenstein's representation of White Nile as a creditor in the bankruptcy.

generally, pursuant to 11 U.S.C. §727, and particularly, pursuant to 11 U.S.C. § 523, relative to the debts owed to Appellees. Mandel additionally contends the bankruptcy court and the district court erred in deciding that the claims asserted by Thrasher and White Nile were not extinguished by a 2012 state-court settlement of litigation between Thrasher and one of Mandel's former attorneys (hereinafter, the "Thrasher/Shore litigation").

## III.

When this court reviews the decision of a district court acting as an appellate court, we "apply[] the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied." *In re JFK Capital Holdings, L.L.C.*, 880 F.3d 747, 751 (5th Cir. 2018) (quoting *Barron & Newburger, P.C. v. Tex. Skyline, Ltd.* (*In re Woerner*), 783 F.3d 266, 270 (5th Cir. 2015) (en banc)). Accordingly, questions of fact are reviewed for clear error and conclusions of law *de novo*. *Matter of Cowin*, 864 F.3d 344, 349 (5th Cir. 2017). Mixed questions of law and fact also are reviewed *de novo. Id.*

An appellate court must afford great weight to the bankruptcy court's factual findings because the bankruptcy court is "in a far superior position to gauge the [debtor's] credibility than a court that has been provided only with cold transcripts." *In re Acosta*, 406 F.3d 367, 373–74 (5th Cir. 2005) (quoting *In re Martin* 963 F.2d 809, 814 (5th Cir. 1992)). A factual finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Found. of America Inc.*, 712 F.2d 206, 209 (5th Cir. 1983) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

IV.

At the outset, we address the timeliness of the notice of appeal filed by Mandel regarding the December 19, 2019 memorandum opinion entered by the district court, in case number 4:17-cv-262, relative to Thrasher, Coleman, and White Nile.  As discussed in the district court's April 24, 2020 order denying leave to appeal,  and the parties' briefs, Mandel timely filed a notice of appeal only in case number 4:17-cv-261, despite the issuance of separate memorandum opinions in both case numbers 4:17-cv-261 and 4:17-cv-262.  Although much of the content of the two memorandum opinions is identical, substantive differences do exist, particularly regarding the dischargeability of debts owed solely to the claimants in the respective cases, i.e., Orenstein and MSM in case number 4:17-cv-261, and Thrasher, Coleman, and White Nile in case number 4:17-cv-262. Furthermore, a separate notification was provided for each matter and each memorandum opinion bears a different case number and caption.

Although we understand the logic of Mandel's position, and readily acknowledge that mistakes occasionally do happen in the course of busy legal practices, the time limits of Federal Rules of Appellate Procedure 4(a)(1) and 4(a)(6) are jurisdictional. *Bowles v. Russell*, 551 U.S. 205, 208 (2007); 28 U.S.C. § 2107. The requirements of Rule 4(a)(6) do not permit the reopening of the time for filing an appeal when the rule's requirements are not met.  And they are not here, given that notice of each opinion was provided and received by Mandel's former counsel and, indeed, Mandel himself.  In any event, as detailed herein, we find no basis for reversing any of the district court's rulings.

No. 20-40026 c/w No. 20-40340

V.

Both the bankruptcy court and the district court rejected Mandel's preliminary assertion that a 2012 settlement of the Thrasher/Shore litigation extinguished any debts that Mandel owed to Thrasher and White Nile, such that a consideration of their dischargeability was unnecessary. After hearing argument, and considering trial testimony, documentary evidence, and the parties' briefs, the bankruptcy court determined that the September 2012 settlement did not encompass the instant claims asserted by Thrasher and White Nile.  Despite Mandel's considerable efforts, the record before us provides no basis to disregard the bankruptcy court's logical and well-reasoned conclusion based, *inter alia*, on the language in the settlement agreement expressly limiting its scope to "claims, demands, or suits, unliquidated whether or not asserted in the above case, as of this date, *arising from or related to the events or transactions which are the subject matter of this case*."[2]

To the contrary, Mandel's assertion that the "release" language of the agreement should essentially be ignored is itself nonsensical, given the purpose and function of settlement agreements, as well as the nature of the attorneys' fee-sharing dispute at issue in the Thrasher/Shore litigation compared to the intellectual property misappropriation and related business disputes giving rise to the claims allowance/discharge litigation involved

[2] (Emphasis added.) Because this issue was addressed in the memorandum opinions issued by the district court in both case number 4:17-cv-261 and case number 4:17-cv-262, we address it herein despite its seeming relevance only to the debts asserted by White Nile and Thrasher.  The settlement was reached in connection with Texas state court litigation between Thrasher (and related entities) against Michael Shore; Alfonso Chan; Shore, Chan and Bragalone, L.L.P.; Shore Deary, L.L.P.; Judy Shore; David Deary; Karen Deary; W. Ralph Canada; Jeff Bragalone; Pat Conroy; and Joe DePumpo, et al., bearing Cause Nos. DC-11-14842 and DC-09-02907.

No. 20-40026 c/w No. 20-40340

here. Further, as noted by the bankruptcy court, there has been no showing that Thrasher had the capacity or authority to individually settle/release claims on behalf of White Nile.

Nor are we swayed by Mandel's assertion that, in September 2013, the bankruptcy court erred in failing to (1) hold an expedited pre-trial evidentiary hearing regarding the scope and impact of the 2012 settlement *and* (2) issue an "indicative ruling"[3] to ensure that we were aware of the bankruptcy court's assessment whilst considering the appeal of the district court's July 2013 judgment regarding the bankruptcy court's September 2011 (liability and damages) determinations relative to the allowance of the claims asserted by Thrasher, Coleman, and White Nile. The bankruptcy court certainly has discretion over the timing and organization of its docket and Mandel offers no basis for a conclusion that an abuse of that discretion occurred. Finally, as the Findings of Fact in paragraphs 11–19 and 55–66 of the March 31, 2017 Findings of Fact and Conclusions of Law reveal, the bankruptcy court certainly gave due consideration of Mandel's assertions regarding the scope of the 2012 settlement prior to rendering its discharge rulings.[4]

## VI.

Regarding discharge of debt, the bankruptcy court concluded, and the district court affirmed, that Mandel should be denied discharge under 11 U.S.C. § 727(a)(3) and § 727(a)(4). Regarding the particular debts owed to the Appellees, the same conclusions were reached, pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6).

---

[3] *See* Fed. R. Bankr. P. 8008.

[4] We thus affirm the judgment of the district court without the necessity of engaging in the convoluted consideration of various dates and rulings that an evaluation of the district court's collateral estoppel determination would require.

No. 20-40026 c/w No. 20-40340

A.

The exceptions to discharge set forth in subsections 727(a)(3) and 727(a)(4)(A) apply when:

> (3) the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; or

> (4)(A) the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account.[5]

Regarding 11 U.S.C. § 523, subsections 523(a)(2)(A), 523(a)(4), and 523(a)(6) prevent a discharge under section 727 . . . from any debt:

> (2) for money, property, services or an extension, renewal or refinancing of credit, to the extent obtained by

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;  [or]

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;  [or]

> (6) for willful or malicious injury by the debtor to another entity or to the property of another entity[.][6]

B.

Section 727 of Title 11 of the United States Code establishes exceptions to the discharge that Chapter 7 of that title otherwise grants to a

---

[5] 11 U.S.C. §§ 727(a)(3) and (a)(4)(A).

[6] 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

debtor.   Discharge of the debtor is required unless a statutory exception applies. *See* 11 U.S.C. § 727(a). The exceptions are construed strictly against the creditor and liberally in favor of the debtor. *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009); *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

Under § 727(a)(3), a plaintiff must show, by a preponderance of the evidence: (1) the debtor failed to maintain and preserve adequate records; and (2) such failure makes it impossible to ascertain his financial condition and material business transactions. *In re Dennis*, 330 F. 3d 696, 703 (5th Cir. 2003).   As explained in *Duncan,* 562 F.3d at 697:

> Under this section, the creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor failed to keep adequate records and that the failure prevented the creditor from evaluating the debtor's financial condition. *Dennis,* 330 F.3d at 703. . . . "A debtor's financial records need not contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *Dennis,* 330 F.3d at 703 (quoting *Goff v. Russell Co. (In re Goff),* 495 F.2d 199, 201 (5th Cir.1974)); *see also In re Juzwiak,* 89 F.3d at 428 ("[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." (citations omitted)); [*Pher Partners v. Womble (In re Womble),* 289 B.R. 836, 856 (Bankr. N.D. Tex. 2003)] ("Creditors are entitled to written evidence of the debtor's financial situation and past transactions; maintenance of such records is a prerequisite to a discharge."). The adequacy of the debtor's records is determined on a case by case basis, using such considerations as the "debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Womble,* 289 B.R. at 856 (internal quotation marks omitted).

If the plaintiff satisfies this initial burden of production—that the debtor's failure to produce adequate records makes it impossible to discern his financial status—the debtor must prove the inadequacy is "justified under all the circumstances." *Dennis,* 330 F.3d at 703. The bankruptcy court has "wide discretion" in analyzing these shifting burdens, and its determination is reviewed for clear error. *Id.*

In preserving business and finance records, sophisticated debtors may be held to a higher standard. *See In re Jones*, 237 B.R. 297, 305 (S.D.Tex. 2005).

Under § 727(a)(4)(A), the plaintiff in a bankruptcy proceeding must show that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). "[T]he purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." *In re Lindemann*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007). A plaintiff asserting a § 727(a)(4)(A) discharge exception bears the burden of demonstrating an actual intent to hinder, delay or defraud creditors. *Matter of Chastant*, 873 F.2d 89, 91 (5th Cir. 1989). "Circumstantial evidence may be used to prove fraudulent intent, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *Duncan,* 562 F.3d at 695; *see also Matter of Reed*, 700 F.2d 986, 991 (5th Cir. 1983)("Fraudulent intent of course may be established by circumstantial evidence, or by inferences drawn from a course of conduct.")

"False statements in the debtor's schedules or false statements by the debtor during the proceedings are sufficient to justify denial of discharge." *Duncan,* 562 F.3d at 695 (citing *Beaubouef,* 966 F.2d at 178.) Further, the materiality of an omission is not solely based on the value of the item omitted

or whether it was detrimental to creditors. *Id.* Rather, the statement need only "bear [ ] a relationship to the bankrupt's business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef*, 966 F.2d at 178 (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)).

The bankruptcy court found the requirements of both 11 U.S.C. §§ 727(a)(3) and (a)(4) satisfied. The district court agreed, highlighting various deficiencies and misrepresentations outlined by the bankruptcy court in making its determinations. Importantly, as the district court emphasized, many of these determinations turned, in significant part, on the bankruptcy court's credibility findings after considering extensive argument, testimony, and numerous exhibits in several proceedings conducted over a five-year period. The district court found no reason to disturb these credibility determinations and neither do we.

The record more than sufficiently demonstrates Mandel's aptitude and willingness to utilize various entities controlled by him to improve his financial position and maximize opportunities for his various business interests with little regard for accounting transparency. Furthermore, this remained true even after he sought the protections of the bankruptcy statutes. The bankruptcy court details numerous inaccuracies and omissions in the payment schedules and monthly operating reports submitted by Mandel. Even worse, he persisted in this practice subsequent to being specifically instructed, in accordance with Bankruptcy Rule 2015.3, to disclose information fully and accurately, under the penalty of perjury,

regarding closely held companies in which he held a "substantial or controlling interest." *See* Fed. R. Bankr. P. 2015.3; Official Form 426.[7]

Additionally, despite his obvious business acumen, sophistication, and intelligence, Mandel does not hesitate to claim innocent confusion and/or invoke his non-attorney status, as well as a proclaimed reliance on the advice of counsel (*without* waiving attorney-client privilege and providing evidentiary support for that assertion), when confronted with unfavorable evidence that he cannot otherwise explain away. Finally, though replete with numerical record citations, conclusory assertions of sufficient recordkeeping, and color commentary, Mandel's numerous briefs fail to provide the detailed factual support and contextual explanation necessary to demonstrate clear error in the district court's and bankruptcy court's assessments of record evidence, as it existed at the time those determinations were made rather than some time thereafter. Accordingly, we likewise find no error in the determination that Mandel's false statements were both material and made with fraudulent intent. Thus, we affirm the district court's rulings regarding both § 727(a)(3) and § 727(a)(4)(A).

## C.

As set forth above, 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) prevent a discharge under section 727 . . . from any debt:

> (2) for money, property, services or an extension, renewal or refinancing of credit, to the extent obtained by

---

[7] Rule 2015.3 implements section 419 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005).

No. 20-40026 c/w No. 20-40340

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

(6) for willful or malicious injury by the debtor to another entity or to the property of another entity[.][8]

Regarding the debts owed to Orenstein and MSM, Mandel argues that he did not contemplate owing attorney's fees when he initially agreed to the appointment of a receiver. Thus, he contends, he did not engage in fraud for purposes of § 523(a)(2)(A) in attempting to avoid paying those fees because he honestly never thought he had to pay attorney's fees. The bankruptcy court obviously did not find this assertion credible and, like the district court, we find no basis on the record before us to reject that assessment.

The bankruptcy court found that Mandel had entered into an agreed receiver order without any intent to comply with the agreement. In support of this conclusion, the bankruptcy court emphasized Mandel's untruthful representation of indigency to the state court with regard to a $14,000 outstanding attorney fee, and his ability and tendency to move funds around "at will depending on where it was needed and who he wanted to pay, [keeping] few, if any accurate records of his business transactions." The bankruptcy court explained: "Here, the demands for payment by Orenstein and MSM were relatively small prior to Mandel's bankruptcy. [But] he simply refused to pay them." And, "[h]e did not tender any payments . . . except in the shadow of sanctions proceedings before the state court, and misrepresented his financial condition to Orenstein, MSM, and the state court." Thus, the bankruptcy court concluded: "The preponderance of the

---

[8] 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

evidence established that Mandel entered into the agreed receiver order without any intent to comply with its requirements." Thus, finding Orenstein's and MSM's claims arose from actual fraud, the bankruptcy court concluded that Mandel should be denied discharge, pursuant to 11 U.S.C. § 523(a)(2)(A), regarding these debts. The district court agreed.

Although the original receivership order did not authorize retention of counsel, it provided notice of that eventual possibility by stating that the receiver was without authority to retain independent counsel "without notice to the parties and court approval." *See Mandel IV*, 747 F. App'x at 957. Indeed, in *Mandel IV* we noted that "Mandel and Thrasher initially agreed to Orenstein's retention of counsel, but soon began to object[.]" *Id.* On this record, we find no clear error in the bankruptcy court's determinations of Mandel's intent.

Lastly, it is unnecessary for us address the dischargeability, under 11 U.S.C. § 523(a), of debts owed to Thrasher, White Nile, and Coleman, given the absence of a timely filed notice of appeal of the district court's rulings in case number 4:17-cv-262. Lengthy discussion of the issue is unwarranted, in any event, considering our claims allowance determinations (relative to misappropriation, fraud, theft, and breach of fiduciary duty) in *Mandel I* and *III*. Given those determinations, the requirements of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) are satisfied.

## VII.

Regarding appeal number 20-40026, the district court is AFFIRMED. Regarding appeal number 20-40340, the appeal is DISMISSED for lack of jurisdiction.