# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2021

Lyle W. Cayce
Clerk

No. 20-40371

Carmela Rivero,

*Plaintiff—Appellant*,

*versus*

Fidelity Investments, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CV-909

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

Carmela Rivero seeks a declaratory judgment that an IRS transfer certificate is not necessary to transfer ownership of her account with Fidelity Brokerage Services, LLC ("Fidelity"). Concluding that such a declaration "would necessarily involve a determination 'with respect to Federal taxes,'" the district court sua sponte dismissed the action for lack of subject-matter jurisdiction. The primary question is whether the Declaratory Judgment Act's ("DJA") federal-tax exception is a jurisdictional condition, requiring dismissal, or a nonjurisdictional condition, which may be waived. Concluding it is jurisdictional, we AFFIRM.

No. 20-40371

I.

Rivero, a Mexican citizen and Texas resident, opened an individual brokerage account with Fidelity (the "Account") in 2010 by transferring 1,900 shares of PepsiCo stock valued at $121,600 from her existing individual brokerage account with Merrill Lynch. Two weeks later, she re-registered the Account as a joint tenancy with right of survivorship, naming Jorge Diaz-Gonzalez Medrano, a citizen and resident of Mexico, as the joint tenant.

Medrano died in 2016. Following his death, Rivero attempted to re-register the Account as an individual account, solely in her name. But Fidelity prevented her from doing so because Treasury Regulation § 20.6325-1 requires a transfer certificate, which Rivero did not provide, to "transfer stock registered in the name of a non-resident decedent," such as Medrano. 26 C.F.R. § 20.6325-1(a); *see also* 26 C.F.R. § 20.6325-1(c) ("A transfer certificate will be issued by the service center director or the district director when he is satisfied that the tax imposed upon the estate, if any, has been fully discharged or provided for."). A transfer certificate is not required, however:

> if the value on the date of death of that part of the decedent's gross estate situated in the United States did not exceed the lesser of $60,000 or $60,000 reduced by the adjustments, if any, required by section 6018(a)(4) for certain taxable gifts made by the decedent and for the aggregate amount of certain specific exemptions.

26 C.F.R. § 20.6325-1(b)(1)(i).

Rivero asserts that she is unable to obtain a transfer certificate "because it requires cooperation from other persons." Moreover, she contends a transfer certificate is not necessary for two reasons. First, she asserts that, as a joint tenancy with right of survivorship, the Account automatically passed to her by operation of state law and was thus not a part

of Medrano's estate.  Basically, she posits that no transfer certificate is required because no transfer is necessary—she is already the sole owner of the Account.  Second, she asserts that Medrano's gross estate situated in the United States did not exceed $60,000 because Treasury Regulation § 20.2040-1 excepts from the value of the estate of a joint tenant with right of survivorship any asset that originally belonged to the survivor, such as Rivero's PepsiCo stock, "[i]f the decedent furnished no part of the purchase price."  26 C.F.R. §20.2040-1(c)(3).  Rivero contends that because Medrano neither furnished any part of the purchase price of the PepsiCo stock nor contributed any property to the Account, no part of the value of the Account is part of Medrano's estate.  And because Medrano did not own any other property in the United States, Rivero contends a transfer certificate is not required under Treasury Regulation § 20.6325-1(b)(1)(i).

Rivero filed a complaint for a declaratory judgment that she is the sole owner of the Account and that "filing . . . an IRS Transfer Certificate, Form 5173, is not necessary to transfer ownership of the . . . Account."  Rivero and Fidelity filed cross-motions for summary judgment.  Rather than reach the parties' motions, however, the district court sua sponte held that Rivero's requested declaration would require the court "to construe various tax code provisions and treasury regulations to value Medrano's gross estate, [which] involves a determination 'with respect to Federal taxes' that is precluded by the plain language of the [DJA]."  The court dismissed Rivero's complaint for lack of subject-matter jurisdiction and denied the parties' cross-motions for summary judgment as moot.

No. 20-40371

II.

Questions of subject matter jurisdiction are reviewed de novo. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009) (citation omitted). The district court's "jurisdictional findings of fact" are reviewed for clear error. *Lonatro v. United States*, 714 F.3d 866, 869 (5th Cir. 2013) (citation omitted).

"The basic statutory grants of federal-court subject-matter jurisdiction," providing for federal-question and diversity-of-citizenship jurisdiction, "are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). The DJA "authorizes federal courts to provide declaratory relief." *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974) (citations omitted). Specifically, the DJA provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . .

28 U.S.C. § 2201(a) (emphasis added). The DJA "does not of itself confer jurisdiction on the federal courts." *Jolly*, 488 F.2d at 36 (citations omitted). The question on which this case turns, however, is whether the phrase "except with respect to Federal taxes" *takes away* a court's power to provide declaratory relief in cases involving federal taxes, *i.e.*, whether the clause is a jurisdictional condition. Our court has not squarely answered this question.

A.

"[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, 546 U.S. at 514 (citation omitted). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court

must dismiss the complaint in its entirety." *Id.* Thus, if the DJA's federal-tax exception imposes a jurisdictional condition that was not met, the district court properly dismissed Rivero's complaint. If the federal-tax exception is nonjurisdictional, the issue was waived because Fidelity never raised it, and the district court could properly have reached the merits of the case.

"[J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks and citation omitted). In a nutshell, jurisdictional conditions circumscribe a court's power to hear a case, whereas nonjurisdictional conditions impose obligations on a party. *Id.*; *Arbaugh*, 546 U.S. at 504. A quintessential jurisdictional condition is the amount-in-controversy requirement in 28 U.S.C. § 1332(a), which limits a federal court's diversity-of-citizenship jurisdiction to actions where the amount in controversy exceeds $75,000. *See Arbaugh*, 546 U.S. at 514–15. Nonjurisdictional conditions generally fall into two categories: claim-processing rules and elements of a plaintiff's claim for relief. Claim-processing rules are "threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). An example is the Copyright Act's pre-registration requirement (i.e., a claimant must preregister or register a copyright before it may institute a civil action for copyright infringement). *Id.* at 169; *see* 17 U.S.C. § 411(a). Elements of a claim for relief "relate[] to the substantive adequacy" of a claim. *Arbaugh*, 546 U.S. at 504. Title VII's numerosity requirement (i.e., defining "employers" as those having "fifteen or more employees") is such a provision. *Id.*; *see* 42 U.S.C. § 2000e(b).

The Supreme Court has cautioned against "mischaracteriz[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations." *Reed Elsevier*, 559 U.S. at 161.

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 161–62 (quoting *Arbaugh*, 546 U.S. at 515–16).

*Arbaugh* is instructive for the task at hand. There, the Supreme Court looked to the text and structure of Title VII's numerosity requirement to determine whether the statute delineated a jurisdictional condition. 546 U.S. at 513–16. Because 42 U.S.C. § 2000e(b)'s numerosity requirement "appears in a separate provision" than Title VII's jurisdictional provision, § 2000e-5(f)(3), that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," the Court held the numerosity requirement not to be a jurisdictional condition. *Id.* at 515–16 (citation omitted).

Examining the text and structure of the DJA's federal-tax exception leads to the opposite conclusion: the statute plainly "speak[s] to the power of the court." *See Landgraf*, 511 U.S. at 274 (citation omitted). Indeed, the exception is an express limitation on the grant of power to "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. By the DJA's text, that power extends to any "case of actual controversy within [a court's] jurisdiction, *except with respect to Federal taxes*." *Id.* (emphasis added). While it has long been established that the DJA "does not of itself confer jurisdiction on the federal courts," *Jolly*, 488 F.2d at 36, the juxtaposition of the DJA's reference to federal courts' jurisdiction and the federal-tax exception indicates that the latter deprives a court of jurisdiction that might otherwise exist in cases "with respect to Federal taxes." *See Warren v.*

*United States*, 874 F.2d 280, 282 (5th Cir. 1989) (stating the federal-tax exception "prohibit[s] federal courts from entertaining proceedings for declaratory relief in cases involving federal taxes" (citations omitted)). The statute does not describe a prerequisite a party must complete before filing a complaint or an element a party must prove. Instead, it clearly limits courts' jurisdiction to provide declaratory relief in cases involving federal taxes, "even in the absence of a challenge from any party." *Arbaugh*, 546 U.S. at 514.

This conclusion is further supported by our precedent construing a similar statute. The Anti-Injunction Act (AIA) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). We have held this provision to be a jurisdictional condition that "divests courts of subject-matter jurisdiction" over such cases. *Matter of Westmoreland Coal Co.*, 968 F.3d 526, 533 (5th Cir. 2020) (citing *Hotze v. Burwell*, 784 F.3d 984, 996 (5th Cir. 2015)). And "there is no dispute . . . that the federal tax exception to the [DJA] is at least as broad as the Anti-Injunction Act." *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)). So while it is true, as Rivero contends, that this action does not involve "the assessment or collection of any tax," such that the AIA does not frustrate jurisdiction, the AIA is simply inapplicable. The AIA's jurisdictional condition only buttresses our conclusion that the DJA's federal-tax exception is likewise a jurisdictional condition that divests subject-matter jurisdiction if it applies. We now turn to that question.

B.

Treasury Regulation § 20.6325-1 requires a transfer certificate to:

> transfer stock registered in the name of a non-resident decedent . . . [unless] the value on the date of death of that part

No. 20-40371

> of the decedent's gross estate situated in the United States did
> not exceed the lesser of $60,000 or $60,000 reduced by the
> adjustments . . . for certain taxable gifts made by the decedent
> and for the aggregate amount of certain specific exemptions.

26 C.F.R. § 20.6325-1(a), (b)(1)(i). Rivero asserts no transfer certificate is necessary because: the Account automatically passed to her by operation of state law when Medrano died, such that a transfer of assets is not implicated; and Medrano's estate does not exceed $60,000. Fidelity concedes that under state law, Rivero is now the sole owner of the Account, but counters that regardless of this fact, governing Treasury regulations require a transfer certificate even in cases of joint tenancy with survivorship. *See* 26 C.F.R. §§ 20.2040-1, 20.6325-1. Fidelity "does not take a position" on the issue of jurisdiction but contends that the applicable Treasury regulations require Rivero to provide a transfer certificate before she can access the Account or re-register it solely in her name.

The district court found that, under either scenario proffered by Rivero, to declare that no transfer certificate is necessary would require the court "to construe various tax code provisions and treasury regulations to value Medrano's gross estate" and make a "determination 'with respect to Federal taxes' that is precluded by the plain language of the Declaratory Judgment Act." We discern no error, much less clear error, with regard to this finding. Indeed, we agree with the district court that deciding the merits of Rivero's request for declaratory relief would inevitably involve sifting through the applicable Treasury regulations discussed above in order, ultimately, to make a determination "with respect to Federal taxes," beyond the power granted to federal courts by the DJA.

## III.

The DJA prohibits courts from providing declaratory relief with respect to federal taxes; that prohibition is jurisdictional. Because the

8

No. 20-40371

requested relief—declaring that Rivero was not required to provide a transfer certificate to Fidelity—necessarily involves a determination with respect to federal taxes, the district court properly dismissed Rivero's action for lack of jurisdiction.

AFFIRMED.