# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2022

Lyle W. Cayce
Clerk

No. 21-20067

In re Cleveland Imaging and Surgical Hospital, L.L.C.,

*Debtor.*

Camil Kreit; Samir Kreit; Fadi Ghanem,

*Appellants,*

*versus*

Christopher L. Quinn, *the CI Litigation Trustee,*

*Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
No. 4:19-CV-3069

Before Higginbotham, Smith, and Ho, *Circuit Judges.*
Jerry E. Smith, *Circuit Judge*:

This case arises from the bankruptcy of Cleveland Imaging and Surgical Hospital, L.L.C. ("CISH"), which, starting in 2002, owned and operated a four-bed hospital in Cleveland, Texas. Camil Kreit, Samir Kreit, and Fadi Ghanem are doctors who invested in CISH and served on its board.

In 2014, CISH filed for bankruptcy. Many of its assets were sold, but

No. 21-20067

its causes of action were placed in trust so they could be liquidated on behalf of its creditors. For that purpose, Christopher Quinn was appointed trustee.

In 2019, however, the doctors filed an adversary proceeding in which they asserted causes of action that the bankruptcy court had placed in trust for CISH's creditors. That led the bankruptcy court to sanction them, concluding that by attempting to seize control of trust property, the doctors had knowingly violated its order confirming the liquidation plan. The doctors appealed, but those sanctions were largely upheld by the district court. The doctors again appeal. Because every issue they raise is meritless, we affirm.

## I.
## A.

Understanding the sanctions order at issue here requires a bit of background on the CISH bankruptcy. In 2012, the doctors sued CISH for breach of contract in state court. When one of CISH's creditors learned that the hospital had ceased operations on account of the suit, the creditor successfully petitioned a state court to appoint a receiver, who then put CISH into bankruptcy in September 2014.

In subsequent bankruptcy proceedings, the doctors competed with one of their rivals on the CISH board to purchase the hospital from CISH's estate. Ultimately, the bankruptcy court approved a sale of the hospital to that rival in August 2015. The doctors objected but did not appeal.

Two months later, however, Camil Kreit wrote to numerous governmental entities[1] to allege that the receiver and the doctors' rival had rigged the asset sale and taken actions to injure CISH. In those communications,

---

[1] In all, Kreit contacted the U.S. Trustee's Office, the local U.S. Attorney's Office, the Texas Attorney General's Office, the U.S. Department of Justice, and the Federal Trade Commission.

No. 21-20067

Kreit identified himself as one of CISH's managers, raised various causes of action on its behalf, and requested any available administrative remedies. When the bankruptcy court learned of Kreit's actions, it sanctioned him. It reasoned that Kreit had sought to assert control over causes of action that properly belonged to CISH and that that violated the automatic stay, which prohibits "any act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Kreit appealed, but we upheld those sanctions. *Kreit v. Quinn* (*In re Cleveland Imaging & Surgical Hosp., L.L.C.*), 690 F. App'x 283, 287 (5th Cir. 2017) (per curiam).[2]

Meanwhile, in June 2016, the bankruptcy court confirmed a liquidation plan for CISH. As before, the doctors objected but did not appeal. As part of that plan, CISH's remaining assets—including its causes of action—were placed into the CI Litigation Trust. Quinn was appointed trustee to pursue those claims and liquidate them on behalf of the creditors.

Two aspects of the plan are notable. First, it kept the automatic stay in place for the benefit of the trust. Second, it provided that the trust would terminate automatically on December 31, 2018.

B.

That brings us to this appeal. In June 2019, the doctors filed an adversary proceeding in the bankruptcy court against CISH's estate and another one of their rivals. They alleged that their rival had defrauded CISH before the bankruptcy filing and that the receiver[3] had breached his fiduciary duties by failing adequately to pursue claims that could serve to recover assets for

---

[2] Kreit's petition for certiorari was denied. *See Kreit v. Quinn*, 138 S. Ct. 429 (2017).

[3] Although the doctors did not sue the receiver, their attorney later admitted that was a mistake.

CISH. The bankruptcy court responded by ordering the doctors to show cause why they should not be sanctioned for violating the automatic stay kept in place by its confirmation order.

After holding two hearings, the bankruptcy court decided to sanction the doctors using its inherent power under Section 105 of the Bankruptcy Code.[4] It concluded that the doctors had brought causes of action that properly belonged to the trust. Accordingly, the bankruptcy court determined that they had attempted to assert control over trust property—thereby violating the automatic stay kept in place by its confirmation order. As required to exercise its inherent authority,[5] the court also found, by clear and convincing evidence, that the doctors had acted in bad faith. That finding was driven by its conclusion that the doctors had knowingly violated its confirmation order.[6]

The bankruptcy court then imposed two categories of sanctions. First, it ordered the doctors to pay for the costs that the trust had incurred as a result of their adversary—namely, the fees that Quinn and his attorneys had charged it for responding to the adversary and litigating the show-cause motion.[7] Second, it enjoined the doctors from violating the automatic stay in

---

[4] That section gives bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

[5] *Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 729–30 (5th Cir. 2014).

[6] In particular, the bankruptcy court emphasized that the doctors knew about the confirmation order and had been rejected by multiple attorneys before finding one who was willing to file their complaint. It also noted that it had previously sanctioned Camil Kreit for engaging in similar conduct.

[7] On the bankruptcy court's instructions, Quinn had moved for the court to use its inherent authority to order the doctors to show cause why they should not be sanctioned. He then prosecuted the show-cause motion. Under the confirmation order and trust agreement, the trust was obligated to pay the fees incurred by Quinn and his attorneys in defend-

No. 21-20067

the future.  That injunction was to be enforced with future sanctions of $100,000 per individual per violation.  Then, in a separate order, the bankruptcy court dismissed the doctors' adversary proceeding with prejudice.

The doctors paid the monetary sanctions to Quinn, who accepted them on behalf of the trust.[8]  Then, they appealed the sanctions order to the district court, which affirmed in part and vacated in part.  As relevant here, it affirmed the monetary sanctions because it agreed with the bankruptcy court's determination that the doctors had violated the automatic stay in bad faith.  But it vacated the "$100,000 sanction for future violations" as "punitive and beyond the bankruptcy court's authority."[9]

Once again, the doctors appealed.  Quinn, however, did not cross-appeal the vacatur of the punitive sanctions.

## II.

"We review 'the decision of a district court sitting as an appellate court in a bankruptcy case by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.'"[10]  That means we usually review the bankruptcy court's

---

ing its interests.

[8] The doctors paid the sanctions to Quinn, not the trust itself, because a trust is not a "separate legal entity" under Texas law. *Hollis v. Lynch*, 827 F.3d 436, 443 (5th Cir. 2016) (quoting *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006)).  Instead, a trust is merely a "fiduciary relationship governing the trustee with respect to the trust property." *Id.* (quoting *Juhl*, 186 S.W.3d at 570).  As a result, it is the trustee who has possession of a trust's property. *See id.* ("A trust cannot possess anything as it is not an entity under Texas law.").

[9] Bankruptcy courts lack the power to impose sanctions so punitive that they amount to a finding of criminal contempt. *Griffith v. Oles* (*In re Hipp, Inc.*), 895 F.2d 1503, 1509 (5th Cir. 1990).

[10] *In re Lopez*, 897 F.3d 663, 668 (5th Cir. 2018) (quoting *Endeavor Energy Res., L.P. v. Heritage Consol., L.L.C.* (*In re Heritage Consol., L.L.C.*), 765 F.3d 507, 510 (5th Cir.

legal conclusions *de novo* and its factual findings for clear error. *Edwards Fam. P'ship v. Johnson* (*In re Cmty. Home Fin. Servs., Inc.*), 990 F.3d 422, 426 (5th Cir. 2021). But when the bankruptcy court sanctions a party using its inherent authority, our review is closer. We uphold those sanctions only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence. *In re Moore*, 739 F.3d at 729–30.

## III.

Before we can get to the merits, we must confirm we have jurisdiction. *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 343 (5th Cir. 2021). It turns out that we have jurisdiction over some—but not all—of the doctors' claims.

## A.

We start with the dismissal of the doctors' adversary proceeding. On appeal, the doctors say that the bankruptcy court was wrong to dismiss their adversary proceeding; they ask us to reinstate it. But they never filed a notice of appeal that properly embraced that issue under the bankruptcy rules, and that means we don't have jurisdiction. *Dorsey v. U.S. Dep't of Educ.* (*In re Dorsey*), 870 F.3d 359, 363 (5th Cir. 2017).

The bankruptcy court dismissed the doctors' adversary and sanctioned them in two separate orders. It entered the dismissal order on the docket for the doctors' adversary proceeding, but it entered the sanctions order on the docket for the underlying *Cleveland Imaging* bankruptcy proceeding. In response, the doctors filed only a single notice of appeal on the *Cleveland Imaging* docket. That notice designated only the sanctions order as the subject of the appeal. And as an exhibit, the doctors attached only the

---

2014)).

sanctions order, not the dismissal order. There are two reasons why that notice of appeal didn't encompass the dismissal order and, accordingly, why we don't have jurisdiction.

*First*, a "notice of appeal in [a] main bankruptcy proceeding" cannot "serve as a notice of appeal in [a related] adversary proceeding." *Dorsey*, 870 F.3d at 362. Instead, the "main bankruptcy case and adversary proceeding must be treated as distinct for the purpose of appeal." *Id.* at 363 (quoting *Dietrich v. Tiernan* (*In re Dietrich*), 490 F. App'x 802, 804 (6th Cir. 2012)). After all, "adversary proceedings are discrete judicial units." *Id.* Given that the doctors didn't file a notice of appeal on the adversary docket, their notice didn't embrace the dismissal of their adversary proceeding. Thus, we lack jurisdiction.

*Second*, the doctors' notice of appeal did not comply with the requirements of the bankruptcy rules for appealing the adversary proceeding. Noticing an appeal from a bankruptcy court is "more demanding" than noticing an appeal from a district court. *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 922 (7th Cir. 2004).[11] Unlike the latter, the former requires that a notice of appeal "be accompanied by the judgment, order, or decree, or the part of it, being appealed." Fed. R. Bankr. P. 8003(a)(3)(B). And the doctors included only the sanctions order, not the dismissal order, with their notice of appeal. That means their notice failed to comply with Rule 8003, so we lack jurisdiction.

## B.

Next, the punitive sanctions. The doctors once again press their claim that the forward-looking sanctions were punitive and beyond the authority of

---

[11] That's likely because a single bankruptcy case can involve many parties and many adjacent adversary proceedings. *Fadayiro*, 371 F.3d at 922.

No. 21-20067

the bankruptcy court. But they *won* on this issue before the district court, and Quinn did not cross-appeal. "[A] prevailing party generally may not appeal a judgment in its favor."[12] Such a party may do so when it continues to suffer an injury from the judgment. *See Camreta v. Greene,* 563 U.S. 692, 702–03 (2011). But the doctors have already received everything they wanted with respect to the punitive sanctions; they fail to identify any additional injury they have suffered from the district court's judgment. Thus, they don't have an injury-in-fact, and we don't have jurisdiction. *See id.* at 701–02.

## C.

We end our discussion of jurisdiction with a relatively unusual issue. Recall that the terms of the trust agreement stated it would terminate no later than December 31, 2018—six months before the doctors filed their adversary proceeding and eight months before Quinn and his attorneys accepted the sanctions award on behalf of the trust. It appears that the doctors figured this out just after briefing had been completed. Several weeks later, they filed an emergency motion to strike Quinn's filings, set aside his actions since 2018, and vacate the district court's order affirming the sanctions order. They claimed that Quinn didn't have standing to defend the sanctions order because he was no longer a trustee and therefore had no interest in preserving it. In supplemental briefing, they also claimed that Quinn didn't have standing to file or prosecute the show-cause motion despite the bankruptcy court's request for him to do so.

Making matters more complicated, the doctors filed a similar motion on the underlying bankruptcy court docket around the same time. Then, before we heard oral argument, the bankruptcy court ruled on that motion.

---

[12] *Zente v. Credit Mgmt., L.P.*, 789 F.3d 601, 603–04 (5th Cir. 2015) (quoting *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004)).

It agreed with the doctors that the trust had "terminated as a matter of law" in 2018. And although Quinn continues to possess the trust assets,[13] the bankruptcy court held that the terms of the trust prohibit him from exercising wind-up powers after its termination. Those powers would have let Quinn continue to exercise his powers as trustee for a reasonable time until he distributed the trust assets to beneficiaries. Tex. Prop. Code § 112.052.

The upshot of all this is that the doctors hope it will lead us to vacate the sanctions order and dismiss this appeal for lack of jurisdiction. After all, standing implicates our subject-matter jurisdiction. *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021). And though it would have been preferable for the doctors to raise these issues before, we have an obligation to assure ourselves of our jurisdiction. *Rivero*, 1 F.4th at 343–44. Even so, we conclude that the bankruptcy court had jurisdiction to enter the sanctions order and that we and the district court have jurisdiction to hear this appeal.

Let's start with the sanctions order. The bankruptcy court entered it under its inherent authority under 11 U.S.C. § 105(a),[14] which gives bankruptcy courts the power to issue civil contempt orders. *See Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) (per curiam). Because the sanctions order sought to "compensate another party for the contemnor's violation" of a court order, it qualifies as such an order. *Id.* That matters because "an order of civil contempt is considered part of the underlying case"—here, the *Cleveland Imaging* bankruptcy case. *Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson)*, 777 F.3d 792, 795 (5th Cir. 2015) (per

---

[13] They are in a bank account he controls.

[14] In relevant part, Section 105(a) provides that bankruptcy courts may "sua sponte, tak[e] any action . . . necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

curiam). Therefore, because the bankruptcy court had jurisdiction over the *Cleveland Imaging* bankruptcy case, it had jurisdiction to enter the sanctions order, too.

Likewise, we have (and the district court had) jurisdiction to consider the doctors' appeal. The doctors say that Quinn doesn't have standing to defend their appeal. The problem with that theory is that standing isn't the right doctrine by which to articulate their objection to Quinn's status as a party. A litigant must be able to show standing when "seek[ing] to *initiate* or *continue* proceedings in federal court."[15] Quinn is seeking to *defend* an appeal initiated by the doctors. Thus, for this case to be capable of resolution under Article III, he doesn't need to show he would have standing.

Nonetheless, Article III requires an "opposing party" to have "an 'ongoing interest in the dispute' . . . that is sufficient to establish 'concrete adverseness'" between the litigants. *Bond*, 564 U.S. at 217 (quoting *Camreta*, 563 U.S. at 701). Normally, this requirement is hardly worth mentioning. After all, a litigant unquestionably has an interest in a case when there is "relief being sought at its expense" by another. *Id.* And standing's traceability and redressability requirements will typically guarantee that that's the case. Hence, nothing is usually lost when courts say that Article III's requirement of a "genuine, live dispute between adverse parties" is "implement[ed]" through the "doctrine of standing." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

Here, the doctors have standing to appeal the sanctions order. Their injury—being forced to pay over $40,000 in sanctions—is a "traditional

---

[15] *Bond v. United States*, 564 U.S. 211, 217 (2011) (emphasis added); *see also Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (noting that standing is required for those "*invoking* the power of a federal court" (emphasis added) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013))).

tangible harm[ ]" that meets the injury-in-fact requirements of Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). That injury is "fairly traceable" to Quinn's conduct in accepting the sanctions award on behalf of the trust. *Carney*, 141 S. Ct. at 498 (quoting *Hollingsworth,* 570 U.S. at 704). And this injury could be "redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. If the bankruptcy court wrongly sanctioned the doctors, this court could order the sanctions returned from their possessor (Quinn) to their rightful owner (the doctors)

Even so, sometimes an opposing party lacks such an interest even when an initiating party can show it has standing. Look no further than *Camreta*, 563 U.S. at 701–03, in which the Court concluded that a child protective service worker who had received qualified immunity nonetheless had standing to appeal. The Ninth Circuit held that he had violated the Fourth Amendment by interviewing a minor at school without a warrant or her parents' consent; it then concluded that he was entitled to qualified immunity because that right was not "clearly established." *Id*. at 699–700. That injured the worker by establishing an "adverse constitutional ruling" that required him to "change the way he performs his duties or risk a meritorious damages action." *Id*. at 703.

Nonetheless, the Supreme Court ultimately concluded that it didn't have jurisdiction. Why? Because for a federal court to exercise jurisdiction under Article III "the opposing party *also* must have an ongoing interest in the dispute." *Id*. at 701 (emphasis added). In *Camreta*, the minor had moved to Florida and was "only months away from her 18th birthday" and "high school graduation." *Id*. at 711. As a result, she no longer had an interest in preserving the Ninth Circuit's constitutional holding. *Id*. That lack of "a stake in the outcome" meant that there was no longer a live controversy for the Court to resolve. *Id*. at 710–11.

No. 21-20067

Quinn, however, still has a "stake in the outcome" that is adequate to confer our jurisdiction despite the termination of the trust. True, Quinn no longer has legal ownership of the trust assets. Nonetheless, as even the doctors recognized at oral argument, the assets are still in a bank account that he controls.

Quinn has a cognizable interest in continuing to possess the assets. On termination, a former trustee like Quinn has a duty to return the trust property to the beneficiaries of the trust.[16] And a former trustee's fiduciary duty with respect to that property doesn't end until the property has been distributed to beneficiaries. 76 AM. JUR. 2D *Trusts* § 335, Westlaw (database updated Nov. 2021). Thus, even though Quinn may lack wind-up powers and doesn't have legal ownership of the property, he has an interest in defending his continued possession of the trust assets so he can fulfill his fiduciary duties and return the property to the trust beneficiaries.[17] That's enough to give him a meaningful interest in this case, so we have jurisdiction.

IV.

That brings us finally to the merits. The doctors' remaining claims have none.

A.

The doctors say that the bankruptcy court erred in finding they had violated its confirmation order by filing their adversary proceeding. That court reached that conclusion because its confirmation order preserved the

---

[16] RESTATEMENT (THIRD) OF TRUSTS § 76 (Am. L. Inst.), Westlaw (database updated Oct. 2021); *cf.* TEX. PROP. CODE § 114.001(a) ("The trustee is accountable to a beneficiary for the trust property . . . .").

[17] In its amended order on termination of the trust, the bankruptcy court indicated that Quinn may request its guidance for distributing the trust property, but he does not yet appear to have done so.

No. 21-20067

automatic stay, which prevents "any act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In the court's view, the doctors' filing violated that provision by attempting to "tak[e] control over assets of the estate which [had] bec[o]me assets of the trust." The doctors dispute this holding on two grounds, but neither is persuasive.

*First*, the doctors claim the automatic stay permitted adversary proceedings like theirs to be filed. They highlight language from *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008), that they insist reveals that filing an adversary proceeding does not violate the automatic stay.[18] But as we later clarified, "[w]hile the language in *Campbell* could suggest a broad rule, the holding was narrow: the automatic stay does not bar the filing of *proofs of claims* in the debtor's bankruptcy case." *Cowin v. Countrywide Home Loans, Inc.* (*In re Cowin*), 864 F.3d 344, 352 (5th Cir. 2017) (emphasis added). That's because the Bankruptcy Code explicitly permits such actions to be filed against a debtor. *See* 11 U.S.C. § 501(a).

The doctors haven't cited a comparable textual exception for their adversary proceeding, which—unlike a proof of claim—undermined the "orderly liquidation [and] administration of the estate." *Cowin*, 864 F.3d at 352 (quoting *Prewitt v. N. Coast Vill., Ltd.* (*In re N. Coast Vill., Ltd.*), 135 B.R. 641, 643 (9th Cir. BAP 1992)). *Campbell* thus doesn't show that the bankruptcy court erred in concluding that the doctors violated its confirmation order.

*Second*, the doctors maintain that their adversary proceeding was properly filed because they had "derivative standing" to litigate the trust's

---

[18] The "automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court." *Campbell*, 545 F.3d at 356 (quoting *In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000)).

claims on its behalf. Based on *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1397–98 (5th Cir. 1987), they say they had the power to assert the trust's claims because Quinn had "refuse[d] or [was] unable to act in the best interest[s] of creditors." That claim faces two problems.

The first is that the doctors forfeited it. They didn't include it in their statement of issues on appeal or press it before the district court.[19] The doctors were required to do both to preserve that claim.[20] Since they didn't, that claim has been forfeited.

The second problem is that the doctors' theory is wrong. *Louisiana World Exposition*, 832 F.2d at 1397, permits only *creditors' committees* to assert derivative standing on behalf of a debtor. The doctors are no such committee. What's more, that decision "generally" requires "that the debtor-in-possession ha[s] refused unjustifiably to pursue the claim" and "that the committee first receive leave to sue from the bankruptcy court" before filing. *Id.* The doctors never demanded that Quinn pursue their claims and never received permission from the bankruptcy court to file their adversary. Thus, notwithstanding *Louisiana World Exposition*, the doctors violated the confirmation order by filing their adversary.

## B.

The doctors make their last stand on the bad-faith requirement. Recall that a bankruptcy court may sanction litigants only if it finds, by clear and convincing evidence, that they acted in bad faith or willfully abused the judi-

---

[19] Instead, they took the opposite position: that their claims were direct, not derivative.

[20] *See Frazin v. Haynes & Boone, L.L.P.* (*In re Frazin*), 732 F.3d 313, 324 (5th Cir. 2013); *Smith v. H.D. Smith Wholesale Drug Co.* (*In re McCombs*), 659 F.3d 503, 510 (5th Cir. 2011).

cial process. *In re Moore*, 739 F.3d at 729–30. The bankruptcy court found that the doctors were acting in bad faith because they had knowingly violated the confirmation order. The doctors say this determination was erroneous. We disagree.

Clear and convincing evidence supports the bankruptcy court's finding that the doctors knowingly violated its confirmation order. The doctors were unquestionably aware of the confirmation order; they had even objected to it when the bankruptcy court was deciding whether to enter it. When Camil Kreit violated that order by seeking to assert control over a different fraud claim that belonged to the trust, the bankruptcy court sanctioned him. Despite being on notice that the fraud claims belonged to the trust, the doctors shopped around to find an attorney who would file their suit. After they succeeded in finding one, each of them reviewed the draft complaint and approved it before the lawyer filed it. And Kreit ultimately admitted that he knew that complaint incorporated arguments that had been rejected by this court. This evidence leads us to the "firm" conclusion that the doctors knew that the confirmation order barred them from filing this adversary proceeding. *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). That means they did so in bad faith. The bankruptcy court's sanctions order was justified.

The doctors contest that determination on two grounds.[21] In their view, they "were left with no choice because the fiduciary refused to protect and prosecute the claims of the estate," and their actions "were good faith efforts to preserve the claims of the estate in the only manner left to them under the framework of the Bankruptcy Code." Once again, both of those

---

[21] The doctors characterize one of their arguments as a due process challenge, but it is better understood as a challenge to the bankruptcy court's bad-faith finding, which was a necessary prerequisite for it to sanction the doctors using its inherent authority. *See Moore*, 739 F.3d at 730.

arguments fail.

The first is based on a blatant mischaracterization of the record.  The doctors never asked Quinn to pursue the claims against their rival, so Quinn could never have "refused" to do so.  The second fails for the same reason.  The doctors could have helped to preserve the claims of the estate by notifying Quinn and asking him to pursue them.  Instead, in the words of the bankruptcy court, "they just hauled off and filed the suit seeking relief that belongs" to the trust.  Hence, the doctors haven't cast doubt on the bankruptcy court's conclusion that they were acting in bad faith when they filed their adversary.  The factual findings stand.

AFFIRMED.